UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:25-CR-20087-MOORE/D'ANGELO

UNITED STATES OF AMERICA

    Plaintiff,

v.

**SCOTT LEE HUSS**,

    Defendants.

_____/

## DETENTION ORDER

Pursuant to the Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, the Court held a hearing on April 14, 2025, to determine whether to detain Scott Lee Huss. ECF No. 12. The United States of America (the "Government") moved for pretrial detention under 18 U.S.C. § 3142(f)(2)(A) and (B), asserting that Mr. Huss poses a serious risk of flight and a serious risk that Mr. Huss will obstruct justice. Having considered the factors enumerated in 18 U.S.C. § 3142(g), the Court finds that no condition or combination of conditions of release will reasonably assure Mr. Huss's appearance at future court dates. As such, the Court **ORDERS** that Defendant Scott Lee Huss be detained before and until the conclusion of trial.

Pursuant to 18 U.S.C. § 3142(i), the Court makes the following factual findings and statement of the reasons for detention:

**I.    BACKGROUND**

A grand jury returned an indictment of Mr. Huss on February 27, 2025,

charging him with six counts of Wire Fraud in violation of 18 U.S.C. § 1343, two counts of Mail Fraud in violation of 18 U.S.C. § 1341, one count of Money Laundering in violation of 18 U.S.C. § 1957, and one count of Impersonating a Foreign Diplomat, Consul, or Official in violation of 18 U.S.C. § 915. ECF No. 3.

For the purposes of the Wire Fraud counts, the indictment alleges that Mr. Huss was the registered listed agent of Leadecom LLC, Apex Marketing Inc., Supremo Sociedad Anonima, LLC, and Temple of the Tao, Inc., all registered in the state of Florida. *Id.* ¶¶ 14-17. The indictment also states that from on or about July 4, 2020, through on or about March 10, 2021, Mr. Huss personally enriched himself through commissions of false and fraudulent applications for Economic Injury Disaster Loans ("EIDL") and Paycheck Protection Program ("PPP") funds made available through the Small Business Administration in order to provide relief for the economic effects of the COVID-19 pandemic, and diverted those funds for his personal use and benefit and the use and benefit of others. *Id.* ¶¶ 2-3. The indictment alleges that Mr. Huss submitted applications using interstate wire communications in the names of the business entities that he created, owned, and controlled, and that the information presented in these applications was fraudulent and led to the disbursement of funds to bank accounts controlled by Huss, which he then diverted for his personal benefit. *Id.* ¶¶ 4-7.

The allegations in the indictment regarding the Mail Fraud counts allege that on or about September 7, 2021, Mr. Huss signed a bill of sale for a 2019 Lamborghini Urus for approximately $148,000. *Id.* ¶ 4. Mr. Huss used the Apex Marketing bank

account for monthly payments on this vehicle. *Id.* ¶ 5. The specific mail fraud counts stem from mailings that occurred on approximately December 5, 2023 and December 27, 2023, where the indictment states that Mr. Huss sent fictitious checks in the amounts of $120,000 and $190,564, respectively. *Id.* ¶ 8.

Count nine of the indictment states that Mr. Huss engaged in money laundering by sending $15,000 from a bank account associated with Leadecom LLC to a bank account associated with Supremo Sociedad Anonima, LLC, knowing that the property involved in the transaction represented criminally deprived property. *Id.* at 9. Count ten of the indictment states that Mr. Huss aided and abetted an individual, "C.M.," in falsely representing status as a foreign government official in an attempt to defraud the United States. *Id.* at 10.

In the Pretrial Detention Hearing, the Government proffered that Mr. Huss was notified of his pending warrant for arrest and given an opportunity to turn himself in by the U.S. Marshals. When Marshals informed Mr. Huss of the pending warrant, Mr. Huss indicated that he would not be turning himself in. Rather, Mr. Huss traveled to a hotel in Dallas, Texas, checking in at the hotel under a different name. The Government also represented that Mr. Huss spent substantial time in Dubai during this past year, leaving in July of 2024 and not returning until February of 2025. Mr. Huss also traveled to Orlando in the recent past and provided foreign identification documents of unknown origin to notarize documents there in response to law enforcement contact.

The Pretrial Services Report states that Mr. Huss confirmed possession of

several international passports and resident status in several other countries. The Pretrial Services Report also indicates that while Mr. Huss claimed that he was not a United States citizen, a database search confirmed that he is a U.S. citizen. While Mr. Huss refused to provide any information about family members or local residence, the Court notes that Mr. Huss' mother appeared at court proceedings and has a residence in Port Charlotte, Florida. The Government noted that in its search for Mr. Huss to execute the arrest, his mother was contacted who indicated that she did not have any knowledge of his whereabouts.

The Government proffered that Mr. Huss lived an extravagant lifestyle and likely had a large amount of financial resources, specifically referencing the demonstrations of wealth on his social media account profiles. In the Pretrial Service Report, however, it indicates that Mr. Huss refused to answer any questions about his finances or assets. The Pretrial Services Report lists conflicting statements from Mr. Huss regarding his employment status and prior work history as well, occasionally stating that he was a singer, and that he is unemployed and has never been employed. This information conflicts with the Indictment, which alleges that Mr. Huss is the registered representative of at least four corporations or limited liability corporations.

The Government proffered that while the warrant was pending, Mr. Huss frequently called several Assistant United States Attorneys on their personal cell phones, along with escalating calls to the U.S. Marshal and other law enforcement officials about the pending case. The Government also proffered that Mr. Huss made

direct contact with judges in the Southern District of Florida in attempts to unseal documents related to his case.

## II. LEGAL STANDANRD

"In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno,* 481 U.S. 739, 755 (1987). There is always a presumption of innocence. *See* 18 U.S.C. § 3142(j). Therefore, detention should only be ordered if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). A detention hearing is held upon motion of the attorney from the government in a case that involves a serious risk that a person will flee, 18 U.S.C. § 3142(f)(2)(A), or a serious risk that a person will obstruct or attempt to obstruct justice, 18 U.S.C. § 3142(f)(2)(B).

To detain an individual based on risk of obstruction, the Government must establish by preponderance of the evidence that no condition or combination of conditions will reasonably assure that a defendant will not obstruct or attempt to obstruct justice. Likewise, to detain based on risk of flight, the Government must satisfy the same standard of preponderance of the evidence that no condition or combination of conditions will reasonably assure that a defendant will not appear for future court dates. *See U.S. v. Kachkar,* 701 F. App'x 744, 745 (11th Cir. 2017) (citing *U.S. v. King,* 849 F.2d 485, 489 (11th Cir. 1988)).

To determine whether there are conditions of release that will reasonably assure the appearance of the person as required and assure the safety of any other

5

person and the community, the court should evaluate the available information concerning four (4) factors:

1. the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
2. the weight of the evidence against the person;
3. the history and characteristics of the person, including—
    a. the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
    b. whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
4. the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### III. ANALYSIS

The Court finds that the Government has met its burden to establish by preponderance of the evidence that Mr. Huss is a serious flight risk and a serious risk to obstruct justice. Further, the Court finds that no condition or combination of conditions can reasonably assure Mr. Huss' appearance in court or that Mr. Huss will not continue to obstruct or interfere with the judicial process in his case. The Court considered the 18 U.S.C. § 3142(g) factors in making that determination and finds that Mr. Huss should be detained.

#### A. Risk of Nonappearance and Obstruction

The Government presented substantial evidence about Mr. Huss' serious risk of flight, and the Court finds that it satisfied its burden of preponderance of the

6

evidence. Mr. Huss reported extensive international travel and has declared residency in several international locations, including countries without extradition such as Dubai. Mr. Huss claimed to not be a United States citizen, which was disproven by an immigration records check. Mr. Huss argued that he has local ties with family and friends, particularly his mother; but when the Government tried to locate Mr. Huss to execute the warrant, his mother did not know his whereabouts. The Government proffered that when they notified Mr. Huss about a warrant for his arrest, instead of turning himself in, he left Florida and proceeded halfway across the country to Texas. Mr. Huss also indicated that he had lived and traveled abroad in the past year for approximately seven months. His employment status is extremely unclear: Mr. Huss is listed as the registered agent of at least the four enterprises named in the indictment, claims to be a singer, and yet also states that he has never been employed. Despite these claims, the Government proffered that Mr. Huss has access to large amounts of capital, which was not refuted or rebutted by the defense.

The Court also finds that the Government satisfied its burden that Mr. Huss is a serious risk of future obstruction of justice on the current case. It went unrefuted that Mr. Huss repeatedly and improperly contacted Assistant United States Attorneys, federal agents, and even judges during the pendency of his case. Mr. Huss' actions in court and prior to his arrest have demonstrated a belief that the laws of the United States do not apply to him. While this is not the case, it does raise severe concerns that he will not comply with future court orders and will continue to improperly intrude and attempt to influence the case illegally should he be released.

## B. Conditions Sufficient to Mitigate Risk

Once the Government has satisfied its burden, the Court then turns to four factors if 18 U.S.C. § 3142(g) to determine if a set of circumstances mitigate Mr. Huss' serious risk of flight and risk of future obstruction.

The nature and circumstances of the offense concern the Court as it relates to Mr. Huss' risk of flight and obstruction. The nature and circumstances of the offenses involve fraud and Mr. Huss' actions during the investigation of the case and his interactions with law enforcement, as well as his international travel documents of unknown origin, all continue a fraudulent theme and suggest that Mr. Huss will not abide by any restrictions the Court would implement to assure his appearance or prevent any undue influence on the judicial process.

The weight of the evidence against Mr. Huss is strong. The weight of evidence factor "primarily concerns 'the weight of the evidence of dangerousness' or risk of flight, and not necessarily 'the weight of the evidence of the defendant's guilt,' although these concepts often will be related." *United States v. Ingram*, 415 F. Supp. 3d 1072, 1081 (N.D. Fla. 2019) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)). The Government's proffer indicates that Mr. Huss was not only the registered agent for all the companies involved in the wire fraud charges, but that he was the individual orchestrating the fraud. Based on the proffer from the Government, the conduct leading to the Indictment gave Mr. Huss an abundance of wealth, some of it obtained from the fraudulent conduct giving rise to the Indictment, which he then used to travel internationally while agents had been contacting him

about the case.

The Court also recognizes that for purposes of serious risk of flight, the history and characteristics of Mr. Huss weigh heavily in favor of detention. He has multiple international travel documents and a history of extended residencies in foreign countries without extradition to the United States. His ties to the Southern District of Florida are tenuous at best, and the ambiguity around his financial circumstances, his employment, and his residency all generate severe concerns about assuring his future appearance in court or securing against future attempts to obstruct the judicial process.

While there is little to suggest that Mr. Huss is a danger to the community, the weight of the other factors severely outweigh this factor, and the Court does not believe that any conditions can reasonably assure his future appearance in court or mitigate the possibility of future obstruction of justice.

## IV.   CONCLUSION

For the reasons stated above, considering the section 3142(g) factors, the Court believes Mr. Huss poses a serious risk of flight and obstruction of justice, and the Government has met its burden of proving that no condition or combination of conditions will reasonably assure Mr. Huss' presence in court should he be released. The Court also finds that the Government has met its burden of proving that no condition or combination of conditions will reasonably prevent the obstruction of justice in Mr. Huss' case upon his release. Accordingly, the Court hereby **DIRECTS**:

    1. That Defendant be committed to the custody of the Attorney General for

confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Defendant be afforded reasonable opportunity for private consultation with counsel; and

3. That, on order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is confined deliver Defendant to a United States marshal for the purpose of an appearance in connection with a court proceeding.

**DONE and ORDERED** in Chambers in Miami, Florida on this 28th day of April, 2025.

_Enjoliqué A. Lett_

**ENJOLIQUÉ A. LETT**
**UNITED STATES MAGISTRATE JUDGE**

cc:   All Counsel of Record
      Pretrial Services (Miami)